IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

RYAN CORBRIDGE,

        Plaintiff,

  v.

ENCOMPASS INDEMNITY
COMPANY,

        Defendant.

Case No. 3:23-cv-00262-JR

ORDER

RUSSO, Magistrate Judge:

      Plaintiff, Ryan Corbridge, brings this action against defendant, Encompass Indemnity Company, alleging wrongful use of civil proceedings and intentional infliction of emotional distress (IIED). Defendant asserts discovery has revealed an unwaivable conflict of interest between plaintiff and his counsel Clayton Huntley Morrison. Accordingly, defendant moves to disqualify counsel and his firm, Law Offices of Clayton H. Morrison, LLC (Law Offices), from representing plaintiff in this case. For the reasons stated below, the motion is granted.

## BACKGROUND

The background to this litigation, as noted previously, is as follows:

1 –ORDER

In January 2015, Tara Dorney sustained injuries as a result of car accident with Grant Gruber. Dorney's insurer, Commerce West Insurance Company, paid $51,000 in personal injury protection (PIP) benefits to Dorney.

Defendant Encompass Indemnity Company insured Gruber. Dorney brought an action against Gruber and reached a settlement where Gruber paid Dorney $144,788 in exchange for dismissal of the case with prejudice. The agreement did not specify who was responsible for reimbursing Commerce West for their $51,000 PIP payment.

Commerce West pursued reimbursement pursuant to Or. Rev. Stat. § 746.534. Commerce West and Encompass entered into an agreement to resolve Commerce West's claim for $51,000 through binding intercompany arbitration. Following arbitration, Encompass was required to pay Commerce West $51,000.

After Encompass was ordered to pay Commerce West, Encompass demanded Dorney satisfy their $51,000 debt to Commerce West and Dorney refused. Encompass, through its attorney Doug Foley, initiated an action in Washington County, Oregon on or about February 16, 2021, against Dorney and Dorney's counsel plaintiff Corbridge. Encompass asserted Dorney agreed to satisfy all liens, subrogation claims, or other rights of interest asserted against the $144,788 settlement and that Dorney and her counsel was thus liable for the $51,000 Encompass was ordered to pay Commerce.

Plaintiff Corbridge did not formally appear in the Washington County case. On or about March 5, 2021, the Washington County Court entered the following Stipulated General Judgment of Dismissal:

> Plaintiff, Encompass Indemnity Company, by and through its attorneys, Douglas F. Foley, of Foley Sampson & Nicholes, PLLC, and Defendants, Ryan Corbridge, Corbridge Law Offices, P.C., and Tara Dorney, by and through their attorney, Heather C. Beasley, of Davis Rothwell Earle & Xóchihua, P.C., hereby agree and stipulate to a General Judgment of Dismissal with prejudice and without costs to any party on all claims as this matter has been fully resolved.

ECF 23-2 at p. 1. Counsel for plaintiff and Dorney signed the stipulation as did Doug Foley.

Encompass obtained none of the relief sought in the complaint, however it did negotiate with Commerce a reduction to the $51,000 it owed pursuant to the arbitration award prior to entering into the stipulated dismissal with plaintiff and Dorney.

Plaintiff initiated this action in Multnomah County, Oregon Circuit Court on January 23, 2023, alleging Encompass instructed the attorney defending Gruber to settle "for the sum of $144,766, **inclusive** of the $51,000 debt owed by Encompass to Commerce West." Complaint at ¶ 16 (ECF 1-1). Plaintiff asserts counsel nonetheless settled the case "for $144,766, exclusive of the $51,000 debt owed by Encompass to Commerce West." Id. at ¶ 17. Plaintiff alleges defendant Encompass hired Doug Foley to sue plaintiff for the $51,000 to "cover up, and/or to repair," the conduct of counsel hired to defend Gruber. Id. at ¶ 18.

Plaintiff alleges defendant Encompass knew its allegation in the complaint against him and Dorney were false when asserting Commerce West had a PIP lien

2 –ORDER

> in the amount of $51,000 for payments made to her and thus owed Encompass for the resulting $51,000 award against it to Commerce West. Id at ¶¶ 23-24. Thus, plaintiff alleges, defendant is liable in "tort" to plaintiff for the damage he suffered as a consequence of the lawsuit filed against him and Dorney.

Findings and Recommendation (ECF 39) at pp. 1-3. The gravamen of plaintiff's complaint is that Encompass initiated the underlying lawsuit knowing it lacked merit and in furtherance of a plan to eliminate or reduce the amount it had to pay to reimburse the PIP payment by Commerce West.

In the Fourth Amended Complaint, plaintiff alleges: (1) "The 'settlement agreement' only required Ms. Dorney to pay out of her settlement 'claims' that were made against the settlement proceeds of $144,766.00…" Fourth Amended Complaint (ECF 46) at ¶ 23(I); (2) "Prior to the filing of the [Underlying Lawsuit]…Encompass repeated the lie that Commerce West had a lien in the amount of $51,000.00 against…the settlement funds." Id. at ¶ 41; (3) "[Plaintiff] did not 'appear' in [the Underlying Lawsuit] at any time." Id. at ¶ 50; (4) Encompass insisted that [Plaintiff] attempt to dismiss the case by way of a Voluntary Stipulated Dismissal, despite the fact that [Plaintiff] had not appeared in the [underlying lawsuit] …" Id. at ¶ 55; and (5) "[Plaintiff] agreed to attempt a dismissal by Voluntary Stipulated Dismissal in order to avoid incurring additional attorney fees and costs…" Id. at ¶ 56.

Plaintiff also alleges that as a result of Encompass's alleged conduct, he incurred attorney fees in an amount not to exceed $25,000. Id. at ¶ 61. In his Rule 26 initial disclosure, plaintiff states that his claimed economic damages are limited to attorney fees and litigation defense costs he incurred in defending the underlying action. ECF 80-16 at p. 13 ($2,598.94 for Heather Beasley's attorney fees, $512.50 for Richard Braun's attorney fees, and costs totaling $45.94).

Defendant asserts it brought the underlying lawsuit under the good faith belief that plaintiff and Dorney violated Oregon law by failing to satisfy the PIP reimbursement from the settlement proceeds in the Gruber action. As noted above, plaintiff asserts the underlying lawsuit was brought

3 –ORDER

for an improper purpose and lacked merit. A member of Law Offices also represented Dorney in the Gruber action and negotiated the settlement for which plaintiff received compensation.[1] Law Offices then advised plaintiff with respect to Encompass's demand that plaintiff and Dorney use the settlement proceeds to satisfy the Commerce West PIP payment.

Defendant notes that discovery in this case has revealed communications written by Morrison on behalf of plaintiff.[2] After a February 1, 2021, letter from defendant advising it intended to file a lawsuit to recover on the PIP claim (including a breach of contract claim), Morrison sent an email to the Oregon State Bar's Professional Liability Fund (PLF) stating:

> The breach of contract claim is a question of law/fact and there is a potential that Foley will succeed with this one claim resulting in a $51,000 judgement against Dorney. If that is the case, then there is standard of care exposure.
> Foley is framing this in a way that: 1) Attempts to obtain a direct judgement against [plaintiff] because he can collect from [plaintiff] but probably not Dorney; and 2) Attempts to create conflict between Dorney and [plaintiff] to both increase the expense of defending these claims and because his breach of contract claim is bolstered if he can get Dorney to cross claim against [plaintiff] alleging malpractice. At some point I anticipate that Foley will offer to take an assignment from Dorney on her malpractice claim.
> …
> We agree that the claims are defensible. But we see exposure in the breach of contract claim.

ECF 80-7.

The Gruber settlement agreement provided at Paragraph E "Claims Against Proceeds":

> Dorney does hereby agree to satisfy all liens, subrogation claims, or other rights or interests asserted in or against the above stated settlement proceeds. Dorney directs their attorney to pay all liens and outstanding medical bills payable against the proceeds from this settlement directly to the lien holders and medical practitioners out of the proceeds from this settlement. Dorney agrees to indemnify and hold

---

[1] Plaintiff asserts C. Huntley Morrison did not participate in any material way in the prosecution or settlement of the Dorney case. However, defendant cites an email from Clayton Morrison Sr. of Law Offices in which he accepts the offer of settlement noting the check should be made out to Plaintiff's law office in trust for Dorney. ECF 83 at p. 23 of 59. Morrison also notes that while Law Offices did not have a fee arrangement with Dorney and earned no attorney fee, Dorney did reimburse Law Offices for the procurement costs advanced toward litigation. Id. at p. 2 of 59. Clayton Morrison Sr., who has since passed away, performed all work in the case as an associated attorney under plaintiff's contract with Dorney. Id.

[2] Plaintiff does not assert any claim of privilege with respect to the communications.

4 –ORDER

>Gruber harmless from any liens, subrogation interests or other rights which may be asserted against the parties released resulting from this settlement. This Agreement includes, but is not limited to, any and all hospital liens, attorney liens, unpaid medical bills, insurer's subrogation claims or rights to reimbursement, disability liens or claims for reimbursement, and the lien of any public agency providing medical or other assistance, including Adult and Family Services, Medicaid and Medicare.

ECF 80-1 at p. 8.

>On February 17, 2021, Morrison again wrote to the PLF:

>>I talked to Mrs. Dorney about her understanding of the settlement agreement. Based upon the large bold letters "E. CLAIMS AGAINST PROCEEDS" and the fact that the subsequent two sentences following that heading only refer to claims against the settlement proceeds, she was of the understanding that she was obligated to satisfy any claim that had been made against her proceeds, but not the [Commerce West] claim because they had elected not to make a claim against her proceeds. The third sentence of that paragraph is ambiguous.
>>…
>>I also think that he is going to pursue a breach of contract claim relying on the 3rd sentence of paragraph E: "Dorney agrees to indemnify and hold Gruber harmless from any ... rights which may be asserted against the parties ... ". "Ambiguity" is going to play a role in this defense and the communications referring to the non-existent [Commerce West] lien and illogical claim that Mr. Dorney could negotiate with [Commerce West] is extrinsic evidence that at the time of the settlement Mr. Gruber was working from the erroneous belief that [Commerce West] possessed a lien/subrogation. My experience with "ambiguity" is in the context of insurance agreements where the law uses rules of interpretation like "clear/unequivocal terms," "two different reasonable interpretations" and "the ambiguity is construed against the insurer." I am pretty certain there are similar rules of interpretation in the context of release agreements.
>>However, the problem with an ambiguity defense is that it still poses a risk to Mr. Dorney. Hopefully, Heather can work some magic and make this go away.

ECF 80-8.

After Encompass filed the underlying lawsuit asserting claims for breach of the covenant of good faith and fair dealing, unjust enrichment, breach of contract, and conversion, the PLF confirmed it would defend both plaintiff and Dorney in order to eliminate any conflict of interest. ECF 80-11.

5 –ORDER

Morrison confirmed approval of this arrangement as follows:

> I think that this is a very unfortunate situation. Doug Foley is not dumb and there are plenty of easily accessible resources available to establish that a reasonable attorney would know that he is making false allegations. I have had multiple cases with him. He understands the issues and is choosing to proceed in this manner. He knows that if he proceeds solely on the contract claim against Mrs. Dorney, then it will boil down to application of an ambiguity analysis. Plus, he was hoping that by manufacturing a conflict, Mrs. Dorney would proceed unrepresented or counter claim with a malpractice claim. He is thinking in terms of getting the case in front of a jury and making this a popularity contest, with the added benefit of knowing he can collect against Ryan.
>
> I spoke to Mrs. Dorney. She is very happy to hear Brad's suggestion and is willing to enter into this agreement. I will leave it up to you both on the process of getting this done. She has reached out to Greg Oliveros for independent advice.

Id.

Just two days after plaintiff was served, on February 26, 2021, Encompass informed plaintiff, Morrison, Dorney, and Beasley, it had reached an agreement with Commerce West to resolve the PIP dispute for a discounted amount and requiring dismissal of the underlying lawsuit. ECF 80-12. Morrison wrote Beasley and the PLF:

> I would suggest that we have [plaintiff] personally pay the appearance fee and at the very least you appear and dismiss him from the suit. I have talked to Mrs. Dorney, and she doesn't care who gets her dismissed. I think Brad should decide. I still haven't received any confirmation of the tender on her. However, I will try to track someone down or I will just make an appearance and get her dismissed after you have filed something if Brad thinks that it is ok for you to get both of them dismissed. It is really important that [plaintiff] pay the appearance fee.
> Sorry, for the unnecessary work and expense. I don't understand why Encompass is doing what they have done but we sure do appreciate your efforts. Everyone on our end is so stressed out about this.

ECF 80-13. Plaintiff agreed he should file the first appearance fee in order to file the stipulated judgment as Foley apparently refused to file a voluntary dismissal with prejudice. ECF 80-14 at p. 3. On March 5, 2021, the parties filed the stipulated judgment of dismissal with prejudice. ECF 80-15.

6 –ORDER

DISCUSSION

As noted, plaintiff asserts a claim for wrongful use of a civil proceeding. The elements of a wrongful use of civil proceeding are:

> (1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;
> (2) The termination of the proceeding in the plaintiff's favor;
> (3) The absence of probable cause to prosecute the action;
> (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and
> (5) Damages.

Alvarez v. Retail Credit Ass'n of Portland, Or., Inc., 234 Or. 255, 259–60, 381 P.2d 499, 501 (1963). "Malice" means the existence of a primary purpose other than that of securing an adjudication of the claim. Id. "Probable cause" means the person initiating the civil action reasonably believes he has a good chance of prevailing, i.e., he has a subjective belief of prevailing, and that belief is objectively reasonable. Pereira v. Thompson, 230 Or. App. 640, 675, 217 P.3d 236, 258 (2009). A factfinder may infer malice from the lack of probable cause. Gustafson v. Payless Drug Stores Nw., Inc., 269 Or. 354, 367, 525 P.2d 118, 124 (1974).

Local Rule 83.7 requires attorneys practicing before this Court comply with the Oregon Rules of Professional Conduct. Those Rules specify that a lawyer may not act as an advocate at trial in which he or another member of his firm is likely to be called as a witness if it is apparent the testimony may be prejudicial to his client. Oregon Rule of Professional Conduct 3.7(c). Defendant assets Morrison will be called as a witness to admit he authorized the emails noted above which contradict or refute key allegations underlying plaintiff's wrongful use of civil proceedings claim, corroborate defendant's defenses, or undermine plaintiff's claim to damages.

Plaintiff asserts he provided Commerce West with the required Or. Rev. Stat. § 742.536 obligation notice of settlement so that it could either seek reimbursement from defendant or assert

7 –ORDER

a lien on the settlement proceeds. Commerce West did not perfect any lien or request subrogation. Accordingly, plaintiff asserts there is no viable claim by defendant to the PIP reimbursement from the settlement proceeds. As noted above, Commerce West elected to collect directly from defendant pursuant to Or. Rev. Stat. § 742.534.[3]

Plaintiff emphasizes that on July 14, 2020, defendant asserted Commerce West was coming after it for a "lien" and requested plaintiff negotiate with Commerce West and pay the lien. ECF 83 at p. 26 of 59. Plaintiff notes defendant contacted him again on July 22, 2020, asserting it was Dorney's responsibility to take care of the "lien." Id. at p. 27 of 59. On January 12, 2021, defendant asserted that both he and Dorney undertook responsibility for paying the lien under the settlement agreement and, as a result, Commerce West obtained an award of $51,000 from defendant. Id. at pp. 28-29 of 59. On February 1, 2021, Foley wrote to both plaintiff and Dorney demanding they pay the $51,000 to defendant due to their failure to "satisfy the lien to Commerce West." Id. at p. 30 of 59. Prior to this demand, Commerce West informed defendant that it had not sought a lien against the settlement proceeds. Id. at p. 33 of 59. In light of the information concerning Commerce West's claim to the $51,000 via subrogation and not a lien, plaintiff contends the communications from Morrison highlighted above do not detract or contradict plaintiff's claim but instead support the claim.

The overall tenor of the Morrison communications was that defendant's claim against plaintiff and Dorney for the PIP reimbursement was baseless. However, he does caution there is some exposure under a breach of contract theory against Dorney and thus exposure for plaintiff via a malpractice claim. At trial, should Morrison testify regarding the communications, plaintiff intends to offer the full context of the communications including highlighting Morrison's belief

---

[3] On July 15, 2020, plaintiff contacted the Commerce West PIP adjuster and confirmed that Commerce West had not pursued a lien against Dorney's settlement proceeds. ECF 83 at p. 32 of 59.

8 –ORDER

the breach of contract claim only provides exposure as to Dorney and that plaintiff's exposure exists due to the standard of care in his representation of Dorney. See, e.g., ECF 83 at p. 37. The Court here does not act as a trier of fact with respect to the merits of the underlying action or as to the wrongful use of civil proceedings claim in this action, only whether Morrison, as a witness regarding his communications related to the underlying action, may be prejudicial to plaintiff. Because a motion to disqualify might be tactically motivated, and can disrupt the litigation process, it is a drastic measure that is generally disfavored. Smith v. Cole, 2006 WL 1207966, at *2 (D. Or. Mar. 2, 2006), Report and Recommendation Adopted, 2006 WL 1280906 (D. Or. Apr. 28, 2006) (citing Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F.Supp.2d 914, 918 (N.D.Cal.2003). The paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Id.

At first glance, Morrison's assessment notes exposure to Dorney and thus does not implicate plaintiff's exposure for the breach of contract claim. The opinion suggests exposure to plaintiff via a malpractice claim that could not be asserted by defendant. However, the underlying action as stated raised claims for unjust enrichment and conversion. If the breach of contract claim was successful, plaintiff arguably has exposure for the conversion claim via disbursement of the proceeds which then again arguably included defendant's interest in the $51,000 portion that represents its contractual right to the PIP reimbursement.[4] Accordingly, Morrison's assessment of the breach of contract claim may be prejudicial to plaintiff's wrongful use of civil proceeding claim. Despite the context of the communications allowing an inference in favor of plaintiff's claim, there is the very real possibility that a trier of fact may view the Morrison assessment of the

---

[4] Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. Becker v. Pac. Forest Indus., Inc., 229 Or. App. 112, 116, 211 P.3d 284, 287 (2009)

9 –ORDER

underlying breach of contract claim and thus conversion claim as demonstrating a lack probable cause.

Moreover, despite plaintiff's evidence that he did not appear in the underlying action, Morrison's communications that plaintiff paid an appearance fee, and the evidence of damage related to that fee, mean that Morrison could again possibly offer evidence as a witness prejudicial to plaintiff's assertions in this case. Accordingly, the motion to disqualify is granted.

## CONCLUSION

Defendant's motion to disqualify counsel (ECF 79) is granted and Clayton Huntley Morrison and his firm, Law Offices of Clayton H. Morrison, LLC. are disqualified from representing plaintiff in this matter.

DATED this 29th day of May, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

10 –ORDER